UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| LEE R. OVERBEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 3:05-CV-488 |
| | ) | (PHILLIPS/SHIRLEY) |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of plaintiff's motion for summary judgment [Doc. 13] and the defendant's motion for summary judgment. [Doc. 15]. Plaintiff Lee R. Overbey seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the defendant Commissioner.

        The ALJ made the following findings:

        1. The claimant met the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

        2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(b) and 416.920(b). These include: rule out personality disorder, rule out borderline intellectual functioning, rule out depression, anxiety, history of arm injury.

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 C.F.R. §§ 404.1527 and 416.927).

7. The claimant has the following residual functional capacity to perform medium work activity, lifting fifty pounds occasionally and twenty-five pounds frequently, sitting for two hours in an eight-hour day, and standing and/or walking for six hours in an eight-hour day. He has significant (moderate) limitations in the ability to understand and remember directions and concentrate and attend.

8. The claimant is unable to perform any of his past relevant work (20 C.F.R. §§ 404.1545 and 416.965).

9. The claimant is a younger individual (20 C.F.R. §§ 404.1563 and 416.963).

10. The claimant has a "marginal education" (20 C.F.R. §§ 404.1564 and 416.964).

11. The claimant has no transferable skills from any past relevant work and/or transferability of

2

> skills is not an issue in this case (20 C.F.R. §§ 404.1568 and 416.968).
>
> 12. The claimant has the residual functional capacity to perform a significant range of medium work (20 C.F.R. § 416.967).
>
> 13. Although the claimant's exertional limitations do not allow him to perform the full range of medium work, using Medical-Vocational Rule 203.26 as a framework for decisionmaking, there are a significant number of jobs in the national economy that he could perform.
>
> 14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

(Tr. 31-32).

If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. See Warner v. Commissioner of Social Security, 375 F.3d 387 (6th Cir. 2004); Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., 823 F.2d at 920 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)).

First, plaintiff argues that the ALJ failed to establish that there is other work he can perform. Although plaintiff acknowledges that the ALJ can meet his burden through the testimony of a vocational expert ("VE") in response to a hypothetical question that accurately portrays his mental and physical impairments, he contends that the ALJ only relied on part of the VE's testimony and that the hypothetical question to the VE did not accurately portray his impairments.

3

With regard to his mental impairment, plaintiff argues that the VE is not a physician and was guessing regarding the extent of the limitations noted by consultative psychological examiner Ms. Branton, noting that the ALJ's decision did not mention or consider the VE's testimony that there would be no work the plaintiff could perform if the limitations noted by Ms. Branton were significant or marked. Plaintiff insists that the VE stated that based on Ms. Branton's report, the only restrictions mentally were in concentration, memory, and social interaction, although she noted "significant academic limitations, cognitive limitations, as well as significant limitations in plaintiff's ability to understand and remember directions, concentrate and attend, social interaction, and adaptation." (Tr. 387-92).

Moreover, plaintiff insists that it appears the VE did not review the complete report of the consultative vision examination by Dr. Ralston because his report had two separate summary pages, one signed and one unsigned, and the VE quoted from the unsigned conclusion page and did not mention the conclusions reached on the signed page, thereby leading plaintiff to assert that "[a]s the VE did not mention any of the findings from the signed page, we can only assume he did not consider it." (Tr. 411). The second conclusion page, which is signed by Dr. Ralston, reports the examination is consistent with hyperopia, astigmatism, and presbyopia with the absence of any visible evidence of pathology and that he is unable to disprove the presence of bilateral amblyopia, noting that the plaintiff has apparently lived most of his life without any optical correction for his high degree of hypermetropia and will probably be unable to be gainfully employed or to carry out any occupation. (Tr. 413).

Next, plaintiff asserts that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence, arguing that the ALJ cited no medical

4

evidence to support his determination.  Plaintiff asserts that the VE assumed he had no physical limitations when the ALJ determined that plaintiff was limited to medium work and had additional limitations in sitting, standing, and walking.  In sum, plaintiff maintains that "the two exhibits handpicked by the ALJ to base his hypothetical question on do not represent the substantial evidence of record."

The Commissioner contends that the ALJ's decision is supported by substantial evidence.  With respect to his physical impairments, plaintiff argues that the ALJ ignored the opinion of consultative ophthalmologist Dr. Ralston that plaintiff could not be gainfully employed.  However, the Commissioner maintains that the ALJ specifically referred to Dr. Raltson's opinion and his statement that the alleged vision deficits would preclude work. (Tr. 28, 409-14).  However, the Commissioner notes that the ALJ also noted Dr. Ralston's conclusion that his visual field test results were inconsistent with other objective evidence and that he could not find any pathology or confirm the poor vision.  (Tr. 28, 409-14).  The ALJ noted that both Dr. Ralston and another consultative examiner, Dr. Franklin, suspected a lack of effort and malingering regarding vision, as did other examiners.  (Tr. 28-29, 409-14, 602-05).  In addition, the ALJ commented that alleged vision deficits had not prevented plaintiff from working in the past, that he was able to watch television with nonprescription reading glasses, and that he had never purchased a pair of glasses, although they had been prescribed.  (Tr. 28).  Thus, the Commissioner insists that plaintiff did not carry his burden of establishing the existence of a severe visual impairment and substantial evidence supports the ALJ's conclusion that plaintiff could perform medium work.  Although plaintiff contends that the ALJ did not discuss  2001 and 2003 opinions from DDS physicians, the Commissioner notes that the 2001 opinion was

5

issued before most of the medical evidence on which the ALJ relied had been submitted and that the 2003 opinion indicating that plaintiff should not climb ladders or scaffolds and should avoid exposure to hazards does not indicate that the jobs identified by the ALJ are incompatible.

With respect to his allegations of a mental impairment, the Commissioner maintains that the ALJ's mental RFC finding was generally consistent with the psychological opinions in the record. The Commissioner asserts that the ALJ noted that Ms. Garland's 2001 assessment indicated that plaintiff functioned at the borderline intellectual level, but stated that his ability to perform semi-skilled work contradicted the diagnosis of borderline intellectual functioning. (Tr. 27). Moreover, the Commissioner points out that the ALJ also observed that in 2003 psychological examiner, Pamela Branton, concluded that plaintiff did not put forth his best effort and might be malingering, noting that evidence of higher intellectual functioning contradicted low IQ scores. (Tr. 27-28, 391). The ALJ found that he could understand, remember, and carry out simple tasks and all of the jobs that the ALJ identified were unskilled, which is consistent with Ms. Garland's finding that he was limited to routine, repetitive work and with Ms. Branton's conclusion that he had significant limitations in his ability to understand and remember. (Tr. 29-3, 389-92, 606-09). In addition, the ALJ noted that records from Ridgeview Psychiatric Hospital indicated that plaintiff missed appointments, did not take his medications as prescribed, and insisted that only Valium helped his anxiety, which was consistent with drug-seeking behavior. (Tr. 28-29).

Lastly, the Commissioner maintains that the hypothetical question described plaintiff in all relevant respects, and therefore, the VE's testimony constituted substantial evidence to support the ALJ's decision. Although plaintiff argues that the ALJ erred by asking

6

the VE if a person with limitations consistent with the conclusions in Ms. Branton's and Dr. Ralston's reports could perform a significant number of jobs, the ALJ asserts that the VE accurately noted that Ms. Branton stated plaintiff was difficult to assess due to his lack of effort and recognized the potential ambiguities in her conclusion that he had "significant" limitations. (Tr. 738). Therefore, the Commissioner maintains that the VE's response to the ALJ's hypothetical questions constitutes substantial evidence to support the ALJ's conclusion.

Upon review of this matter, I find plaintiff's arguments to be without merit because the ALJ's decision demonstrates that he considered all the medical and psychological evidence. (Tr. 23-32) 20 C.F.R. §§ 404.1527(b), 416.927(b). Although plaintiff testified that he cannot work because of poor vision, back pain, and anxiety, the overarching issue in this case is his own credibility, which the ALJ and other sources noted. (Tr. 29) Jones v. Commissioner of Social Security, 336 F.3d 469, 476 (6th Cir. 2003) (ALJ's credibility finding entitled to substantial deference because of the ALJ's unique opportunity to observe the claimant and judge his subjective complaints). Consultative examiners Drs. Franklin, Summers, and Ralston all noted a lack of effort or malingering on the part of plaintiff regarding his alleged vision impairment. (Tr. 28). Dr. Franklin examined plaintiff in February 2001 and suspected lack of effort and malingering regarding vision (Tr. 28, 602-05), and in March 2001 Dr. Summers performed a consultative examination of plaintiff, noting that he suspected plaintiff was malingering with regard to his visual impairment, noting that he had no difficulty walking through the hall and opening doors during the examination. (Tr. 26, 624-27). Additionally, consulting examiner Dr. Ralston evaluated plaintiff in June 2003 and found that the medical evidence did not support plaintiff's alleged deficits in vision, noting that plaintiff's "visual acuity

7

was probably much better than the patient will admit," as well as the possibility of malingering, and that plaintiff had worked in the past with his vision problems. (Tr. 28, 409-14). In addition to malingering, the ALJ noted that plaintiff exhibited drug-seeking behavior because he denied improvement with any medication except Valium. (Tr. 29). With respect to plaintiff's back problem, the ALJ found that the "[o]bjective findings are minimal," noting that MRI and other imaging tests showed only mild problems (Tr. 286-330, 595-601) and that consultative examiner Dr. Johnson in March 2003 performed a consultative examination and found plaintiff could sit for more than 6 hours during the day with some mild standing, walking, and lifting restrictions. (Tr. 26) 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Psychologists who evaluated plaintiff also noted malingering or a lack of effort by plaintiff. (Tr. 27). Specifically, in February 2001, psychological examiner Ms. Garland noted that "[t]he claimant gave up easily on test items" (Tr. 27, 606-09), and in May 2003, "Ms. Branton suspected claimant had not put forth his best effort and was only superficially cooperative." (Tr. 387-92). The ALJ noted that there was "no valid evidence in the record to confirm a diagnosis of borderline intellectual functioning," finding ultimately that plaintiff had moderate limitations in his social functioning and activities of daily living and could understand, remember, and carry out simple tasks. (Tr. 27, 29).

At Step 5, the burden shifts to the Commissioner to demonstrate that plaintiff can perform a significant number of jobs in the national economy. 20 C.F.R. §§ 404.1520(f), 416.920(f). As plaintiff acknowledged in his brief, the ALJ can meet this burden by relying on the testimony of a VE, see <u>Cline v. Commissioner of Social Security</u>, 96 F.3d 146, 150 (6th Cir. 1996), but the ALJ is not required to include limitations in the hypothetical question that are not supported by the record. <u>Stanley v. Secretary of Health and Human Services</u>, 39 F.3d 115, 118-

8

19 (6th Cir. 1994) (an ALJ is not obligated to incorporate unsubstantiated complaints into his hypothetical). Plaintiff suggests that the ALJ failed to include in the hypothetical Dr. Ralston's opinion that plaintiff was unable to work and that the ALJ forced the VE, who is not a physician, to guess about his psychological limitations. Clearly, the ALJ was not required to include Dr. Ralston's opinion that plaintiff was unable to work because that is a decision reserved for the Commissioner, 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1), and I find no merit to plaintiff's argument that the VE was forced to guess about plaintiff's psychological limitations, although she did note Ms. Branton's difficulty in assessing plaintiff's limitations. (Tr. 738). I find that the ALJ included all of plaintiff's limitations to the extent he found them credible based on the evidence of record and properly relied on the VE's testimony to determine that other work existed in the national economy that the plaintiff could perform. See 20 C.F.R. §§ 404.1566(e), 416.966(e) (ALJ has discretion to use a VE to assist in determining whether there is other work in the national economy).

In light of the foregoing, it is hereby **RECOMMENDED**[1] that the plaintiff's motion for summary judgment [Doc. 13] be **DENIED** and that the defendant's motion for summary judgment [Doc. 15] be **GRANTED**.

Respectfully submitted,

  s/C. Clifford Shirley, Jr.  
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).